ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL XI

| | | |
|---|---|---|
| DAVID UBALDO VELÁZQUEZ FIGUEROA<br><br>QUERELLANTE-RECURRENTE<br><br><br>V.<br><br><br>JUNTA DE RETIRO GOBIERNO DE PUERTO RICO<br><br>QUERELLADOS-RECURRIDOS | TA2025RA00290 | *REVISIÓN* *Decisión Administrativa* procedente de la Oficina de Asuntos Adjudicativos de la Junta de Retiro<br><br>Caso Núm.: 2024-0027<br><br>Sobre: Reinstalación |

Panel integrado por su presidenta, la juez Brignoni Mártir, el juez Salgado Schwarz y la juez Aldebol Mora

**Brignoni Mártir, Juez Ponente**

### SENTENCIA

En San Juan, Puerto Rico, a 18 de diciembre de 2025.

Comparece ante nos, David U. Velázquez Figueroa (en adelante, "Velázquez Figueroa" o ("el recurrente"). A los fines de solicitar nuestra intervención para que dejemos sin efecto la *Resolución* emitida el 12 de agosto de 2025 y notificada el día 14 del mismo mes y año, por la Oficina de Asuntos Adjudicativos de la Junta de Retiro (en lo sucesivo, "la Oficina de Asuntos Adjudicativos"). Mediante el referido dictamen, el foro administrativo apelativo confirmó la determinación emitida previamente por la Junta de Retiro del Gobierno de Puerto Rico (en adelante, "Junta de Retiro"), en cuanto al cese de los beneficios de pensión por incapacidad previamente otorgados a Velázquez Figueroa y su reinstalación al servicio público, como maestro de educación física del Departamento de Educación.

Por los fundamentos que exponemos a continuación, *confirmamos* la determinación recurrida. Veamos.

**I.**

El 21 de febrero de 2025, el Área de Servicios y Beneficios, División de Determinación de Incapacidad y Reconsideraciones de la Junta de Retiro, emitió una misiva, dirigida a Velázquez Figueroa, en la que determinó que éste no cumplía con los criterios de incapacidad de su agencia y recomendó la suspensión de los beneficios de pensión por incapacidad previamente otorgados, luego de una evaluación e informe realizado por un consultor externo fisiatra.[1] En la misma fecha, emitió una carta dirigida al Director de Recursos Humanos del Departamento de Educación en la que ordenó que debía tomar las medidas necesarias para el reingreso de Velázquez Figueroa al servicio público en un término no mayor de noventa (90) días.

Por su parte, el 19 de marzo de 2025, Velázquez Figueroa presentó una "*Apelación*" ante la Oficina de Asuntos Adjudicativos.[2] Alegó, que la Junta de Retiro determinó suspenderle los beneficios de pensión por incapacidad y ordenó su reinstalación al servicio público sin la debida investigación y a tenor de la opinión de un médico que, según adujo, no tuvo ante sí su diagnóstico ni su récord médico. Sostuvo, que esta determinación se realizó sin fundamento; sin especificar los hechos imputados; sin evidencia; y sin discutir el informe que dio paso a la decisión tomada.

En respuesta, el 10 de abril de 2025, la Junta de Retiro presentó *"Contestación a la Apelación."* En esencia expresó, que el 8 de noviembre de 2024, le envió al recurrente una comunicación mediante la que le informó que le correspondía la reevaluación periódica de su caso de incapacidad. Además, se opuso a la presentación de cualquier prueba documental que no haya sido previamente presentada ante la Junta de Retiro. Finalmente, solicitó la desestimación de la "*Apelación"* incoada por el recurrente.

---

[1] Apéndice 2 de la Entrada Núm. 1 del Sistema Unificado de Manejo y Administración de Casos del Tribunal de Apelaciones (SUMAC TA).
[2] Apéndice 3 de la Entrada Núm. 1 del SUMAC TA.

El 19 de mayo de 2025, la Oficial Examinadora asignada, emitió una "*Notificación de Vista Administrativa"* y señaló la fecha de 27 de junio de 2025 para la celebración de la vista.[3]

Luego de celebrada la vista administrativa, el 14 de agosto de 2025, la Oficina de Asuntos Adjudicativos notificó la *"Resolución"* que hoy nos ocupa.[4] En la referida *Resolución*, realizó las siguientes Determinaciones de Hechos y Tracto Procesal:

1. David Uriel Velázquez Figueroa, en adelante el "Prof. Velázquez" o la "parte Apelante", nació el 7 de julio de 1982, y al presente tiene 42 años. Se desempeñó como Maestro de Educación Física (K-12) en el Departamento de Educación, siendo su último día de trabajo el 5 de junio de 2018. Posteriormente, su renuncia se hizo efectiva el 5 de agosto de 2022. En el Sistema de Retiro, acreditó un total de 11 años, 1 mes, 2 semanas y 1.92 días de servicio.

2. El 1 de febrero de 2022, el Prof. Velázquez presentó una Solicitud de Retiro por Incapacidad mediante radicación electrónica.

3. Tras evaluar la solicitud, el 5 de julio de 2022, el Área de Servicios de Retiro notificó al Prof. Velázquez que el médico examinador de la Junta de Retiro certificó su condición de incapacidad. En consecuencia, se le concedió el beneficio de retiro por incapacidad por un per[i]odo de dos (2) años, con la condición de someterse a una nueva evaluación en junio de 2024.

4. El 15 de julio de 2024, la División de Evaluación Técnica del Área de Determinación de Incapacidad y reconsideraciones de la Junta de Retiro envió, por correo postal, una carta al Prof. David Velázquez Figueroa, el cual lee como sigue:

   *Hacemos referencia a la reevaluación periódica a los pensionados del Sistema en virtud de la Ley 160 del 24 de diciembre de 2013. Para poder reevaluar su caso, es necesario nos someta evidencia médica actualizada de tratamiento de las condiciones de salud por las cuales le fueron otorgados los beneficios de pensión por incapacidad provisional.[1] A esos efectos le estamos enviando los siguientes formularios para que sean cumplimentados por su médico (s) de tratamiento: **Formulario Neurológico de Espina y Range of Motion**. Se advierte que el término para someter esta evidencia médica será dentro de los próximos treinta (30) días. En la alternativa que no pueda someter los formularios, deberá someter copia certificada como fiel y exacta de su récord médico de las condiciones por las cuales solicitó los beneficios de pensión por incapacidad.*

   *De necesitar prórroga para someter los documentos favor solicitarlo por escrito. […]*

   _____
   [1]Condición lumbar y cervical.

_____
[3] Apéndice 4 de la Entrada Núm. 1 del SUMAC TA.
[4] Apéndice 5 de la Entrada Núm. 1 del SUMAC TA.

5. El 6 de agosto de 2024, el Prof. David Velázquez Figueroa envió, por correo postal, copias del expediente del Caso Número 17-03-13985 ante la CFSE. Posteriormente, remitió documentación adicional los días 9 y 12 de septiembre de 2024.

6. Mediante comunicación escrita de fecha 8 de noviembre de 2024, el Área de Determinación de Incapacidad citó al Prof. David Velázquez Figueroa a un examen médico con el especialista DR. Rafael Seín Siaca, Fisiatra, como parte del proceso de reevaluación de pensionados por incapacidad de la Junta de Retiro, a los fines de evaluar el caso en sus méritos.

7. Evaluada la totalidad de la evidencia presentada, en conjunto con el expediente del Prof. David Velázquez Figueroa y el resultado del examen médico practicado, mediante carta fechada el 21 de febrero de 2025 y enviada por correo postal el 25 de febrero de 2025, el Área de Servicios y Beneficios le notificó lo siguiente:

*Hacemos referencia a la reevaluación de beneficios de pensión por incapacidad provisional que recibe del Sistema en virtud de la Ley 160 del 24 de diciembre de 2013 y la reglamentación aplicable.*

*El Artículo 4 inciso c de la Ley 160, antes citada, establece lo siguiente: "Los pensionados por incapacidad del Sistema de acuerdo con las disposiciones de esta Ley o cualquier otra ley de pensiones, serán examinados periódicamente por un médico nombrado por el Sistema. Si dicha incapacidad desapareciere, el pago de la pensión continuará por un periodo de seis (6) meses a partir de la fecha del examen que lo declara capacitado para reingresas al servicio.*

*De otra parte, el Reglamento de Pensiones y Concesiones de Beneficios del Sistema de Retiro para Maestros, Reglamento 8029 del 27 de mayo de 2011, en la sección 5 inciso B establece sobre la Suspensión de Pensión lo siguiente: "Los pensionados retirados por incapacidad serán examinados periódicamente por un médico nombrado por el Sistema. Si dicha incapacidad desaparece, el pago de la renta anual vitalicia se continuará por un periodo de hasta seis (6) meses a partir de la notificación declarándolo recuperado de la incapacidad. En el inciso (d) se establece sobre el particular lo siguiente: "Cuando el Sistema resuelva que ha cesado la incapacidad de un pensionado, deberá orientarlo a su derecho a solicitar a la autoridad nominadora de la agencia gubernamental donde el pensionado prestaba servicios, a que proceda su reinstalación". Disponiéndose que el pago de la renta anual se suspenderá al momento de la reinstalación.[1]*

*A usted le fue concedido el beneficio de pensión por incapacidad provisional en virtud de la Ley 160, antes citada, por su condición de discos herniados y radiculopatía en el área cervical y área lumbar. Conforme a la evidencia médica presentada y a los hallazgos clínicos de la evaluación realizada por nuestro Consultor Externo Fisiatra, Dr. Rafael Seín, se ha determinado que usted actualmente no cumple con los criterios de incapacidad de nuestra Agencia. Por lo antes expuesto se recomienda la suspensión de los beneficios de pensión por incapacidad previamente otorgados. Su caso será referido a la División de Nómina de Pensionados para la acción correspondiente. De otra parte, también se le enviará copia de esta comunicación al Departamento de Educación para su conocimiento, Es necesario que acuda a la Oficina de Recursos Humanos de su Agencia para que procedan con su reinstalación. Tan pronto sea reinstalado deberá notificarnos para evitar que incurra en un cobro indebido de pensión.*

*Adjunto copia de la carta enviada al Departamento de Educación con relación a este asunto.*

*De usted no estar de acuerdo con esta determinación, podrá solicitar apelación ante la Oficina de Asuntos Adjudicativos de la Junta de Retiro dentro del término de treinta (30) días, a partir de la notificación de la decisión del Director Ejecutivo. Le incluimos como guía, pliego de advertencias y reglas generales que aplican para la solicitud de apelación. Obsérvese que los términos que prevalecen son los expuestos en la presente notificación. De usted no solicitar apelación dentro del término indicado, la determinación del Director Ejecutivo advendrá final y firme.*

---

[1] *El pago se realizará un máximo de 6 meses de haberse determinado que ha cesado la incapacidad o la fecha en que e [sic] haya reinstalado a la Agencia, lo que resulte menor.*

7. *[sic] El 19 de marzo de 2025, a las 5:13 p.m., el Lcdo. Rafael R. Pinzón Santiago, en representación del Prof., Velázquez, presentó mediante correo electrónico una «Moción Asumiendo Representación Legal» junto con una «Apelación». Dicho correo fue recibido y registrado en la Oficina de Asuntos Adjudicativos de la Junta de Retiro el 20 de marzo de 2025. En la apelación, impugna la determinación de la Junta de Retiro del Gobierno de Puerto Rico, emitida el 21 de febrero de 2025 y notificada el 25 de febrero de 2025, mediante la cual se ordenó la suspensión de la pensión por incapacidad y la reinstalación al servicio público. Alega que la decisión se tomó sin una evaluación médica adecuada ni la debida consideración del récord clínico, en violación del derecho al debido proceso de ley. Asimismo, sostiene que la determinación se basó únicamente en la opinión del consultor externo, Dr. Rafael Seín, quien no realizó examen médico ni revisó el expediente clínico, a pesar de que el Prof. Velázquez continúa recibiendo tratamiento por las mismas condiciones que dieron lugar a la concesión de la pensión. Además, denuncia que no tuvo acceso al informe médico ni a la investigación realizada, lo que afecta su derecho a presentar prueba y controvertir la decisión. En consecuencia, solicita a este Honorable Foro que revoque la resolución de la Junta de Retiro y ordene la restitución de la pensión por incapacidad, garantizando así el derecho al debido proceso y evitando un perjuicio irreparable a su salud y estabilidad económica.*

8. *Incoada la jurisdicción del foro, el 21 de marzo de 2025 se notificó la celebración de una Conferencia con Antelación a Vista, programada para el 30 de abril de 2025, y se ordenó a las partes presentar una moción informativa individual con al menos, diez (10) días de antelación a la conferencia. Asimismo, se notificó el señalamiento de la Vista Administrativa para el 30 de mayo de 2025.*

9. *El 26 de marzo de 2025, la Parte Apelante presentó nuevamente, mediante correo postal con matasellos del 20 de marzo de 2025, la «Moción Asumiendo Representación Legal» y la «Apelación», esta vez acompañadas de prueba médica.*

10. *Se emitió una «Resolución Interlocutoria» a la parte Apelante el 26 de marzo de 2025, declarando Ha Lugar la moción asumiendo representación legal, presentada el 19 de marzo de 2025 mediante correo electrónico y el 20 de marzo de 2025*

*mediante correo postal. Dicha resolución incluyó las advertencias sobre el derecho a reconsideración.*

11. *En la misma fecha, se emitió una «Orden» a las partes en relación con el uso de videoconferencias. Se informó que, a partir del 6 de diciembre de 2024, con la entrada en vigor del Reglamento de Asuntos Adjudicativos de la Junta de Retiro del Gobierno, de Puerto Rico, Reglamento Núm. 9614 de 2024, se estableció la videoconferencia como alternativa válida para la celebración de vistas administrativas, con el mismo valor legal que una audiencia presencial. Se especificó que las plataformas a utilizar serán "Microsoft Teams" o "Zoom", disponibles de forma gratuita. Además, se indicó que las partes y sus representantes deberán garantizar que cuentan con los medios tecnológicos adecuados y notificar cualquier inconveniente con anticipación. Asimismo, se estableció que las solicitudes sobre testigos, intérpretes o suspensión de vistas deberán presentarse conforme al Reglamento. Se advirtió que el incumplimiento de estas disposiciones podría conllevar sanciones, conforme a lo dispuesto en la Regla 5.02 del Reglamento.*

12. *El 10 de abril de 2025, la parte Apelada por conducto de su representación legal, el Lcdo. Félix Maldonado Robles, presentó «Moción Informativa para Status Conference» y, a su vez, «Contestación a Apelación», alegando y solicitando en síntesis que la parte apelante recibía beneficios de pensión por incapacidad bajo la Ley 160-2013, según enmendada, desde el 1 de agosto de 2019, y que conforme al Artículo 4.7(c) de dicha ley, el 8 de noviembre de:2024 se le notificó que correspondía una reevaluación periódica. Tras dicho proceso, mediante comunicación del 21 de febrero de 2025, notificada el 25 de febrero, Retiro determinó suspender los beneficios y proceder con la reinstalación de la parte apelante a su puesto en el Departamento de Educación. Tras evaluar la prueba en el expediente, Retiro concluyó que la parte apelante no cumple con los criterios médicos para una incapacidad permanente conforme a la normativa vigente. Se opuso además a la consideración de evidencia no presentada ante Retiro durante la etapa administrativa, al amparo de la Ley 160. Por las razones expuestas, solicitó la desestimación de la presente apelación y, en la alternativa, que se confirme la determinación emitida. Asimismo, no renunció a ejercer cualquier otra defensa que proceda en derecho conforme al descubrimiento de prueba.*

13. *La Conferencia con Antelación a Vista fue celebrada el 30 de abril de 2025, por la Lcda. Raquel Sosa Gierbolini en calidad de Oficial Examinadora. Compareció la parte Apelante acompañada de su abogado el Lcdo. Rafael R. Pinzón Santiago, mientras que la parte Apelada se presentó representada por el Lcdo. Félix Maldonado Robles. Se le ordenó a la parte Apelante a presentar su Moción Informativa dentro del término de cinco (5) días. El caso quedó señalado para la celebración de Vista Administrativa.*

14. *Se emitió «Orden de Mostrar Causa» a la parte Apelante el 6 de mayo de 2025, para que dentro del término de diez (10) días mostrara justa causa por la cual no se le deban imponer*

*sanciones ante su incumplimiento con la orden del 30 de abril de 2025. Fue apercibida sobre las sanciones que le podrían ser impuestas.*

15. *El 6 de mayo de 2025, la parte Apelante presentó «Moción en Cumplimiento de Orden» y, a su vez «Moción Informativa».*

16. *Se emitió «Resolución Interlocutoria» a la parte Apelante el 9 de mayo de 2025, informando que se tuvieron por cumplidas las órdenes emitidas el 30 de abril de 2025 y el 6 de mayo de 2025.*

17. *El 14 de mayo de 2025, la parte Apelante presentó «Moción en Solicitud de Transferencia de Vista».*

18. *En esa misma fecha se emitió «Orden» a la parte Apelada, para que dentro del término de cinco (5) días presentara su posición en cuanto a la solicitud presentada por la parte Apelante. Fue apercibida sobre las sanciones que le podrían ser impuestas de no recibirse contestación.*

19. *El 19 de mayo de 2025, la parte Apelada presentó «Moción en Cumplimiento de Orden».*

20. *En esa misma fecha se emitió «Resolución Interlocutoria» a las Partes, informando que, luego de evaluada la posición de las partes, se declaraba Ha Lugar la solicitud de transferencia de vista. Se indicó que próximamente recibirían el nuevo señalamiento de vista administrativa. Se incluyeron las advertencias de suspensión y de reconsideración, según disponen las Reglas 3.05 y 4.02 del Reglamento Número 9614-2024.*

21. *Se expidió «Notificación de Vista Administrativa» el 19 de mayo de 2025, para celebrarse el 27 de junio de 2025 en el Salón de Audiencias de la Oficina de Asuntos Adjudicativos.*

22. *La Vista Administrativa fue celebrada el 27 de junio de 2025, presidida por la Lcda. Raquel Sosa Gierbolini, quien fungió como Oficial Examinadora. Compareció la parte Apelante, acompañada de su representación legal, el Lcdo. Rafael R. Pinzón Santiago, mientras que la parte Apelada se presentó representada por el Lcdo. Félix Maldonado Robles. El testimonio vertido en sala se transcribe según consta a continuación:*

| | |
|---|---|
| **Examinadora:** | Muy buenas tardes a las partes, sepan que estos procesos están siendo grabados. Hoy, 27 de junio de 2025, nos encontramos en el Salón de Audiencias de la Oficina de Asuntos Adjudicativos. Yo soy la licenciada Sosa Gierbolini y fui designada para presidir estos procedimientos. A esos fiñes se llama el Caso Número 2024-0027, siendo la parte Apelante David Velázquez Figueroa, y la parte Apelada la Junta de Retiro, ¿Pudieran identificarse las partes? |
| **Lic. Pinzón:** | Sí, muy buenas tardes a todos los presentes, el licenciado Rafael Pinzón en |

|  |  |
|---|---|
|  | representación del señor David [inaudible] que se encuentra conmigo. |
| **Sr. Velázquez:** | David Velázquez. |
| **Examinadora:** | Bien, bienvenido. |
| **Lic. Maldonado:** | El licenciado Félix Maldonado en representación de la Junta de Retiro. |
| **Examinadora:** | Bienvenidos ambas partes. El presente caso fue debidamente citado para la celebración de una vista administrativa en sus méritos. Le pregunto a las partes, ¿si se encuentran preparados para la celebración de la misma? |
| **Lic. Pinzón y Lic. Maldonado:** | Sí. Estamos preparados. |
| **Examinadora:** | ¿Va a estar presentando el testimonio de su representado? |
| **Lic. Pinzón:** | Sí. |
| **Examinadora:** | Señor Vázquez, ¿pudiera levantar la mano de su preferencia? ¿Jura o afirma usted decir la verdad ante todas las preguntas que se le realicen en la tarde de hoy? |
| **Sr. Velázquez:** | Sí, lo juro. |
| **Examinadora:** | Bien. ¿Le pregunto a las partes si interesan comenzar con una breve teoría del caso y las prueba a presentarse o iniciaría con su testigo? |
| **Lic. Pinzón:** | Nada aquí nosotros nos encontramos ante una situación donde, el caballero radicara aquí. Fue obviamente compensado en un momento dado y estaba recibiendo una pensión debido a unas condiciones de salud tanto de condiciones del hombro [inaudible] vertebral de la espalda, eh de su columna. Actualmente pues [inaudible] operación. Está en constante evaluación de su médico de cabecera y su médico del Fondo. Eh, sin embargo, hace varios meses recibió una misiva donde se le iba a remover de su pensión, por una supuesta evaluación que hizo un médico del departamento y obviamente que se tenía que reinstalar a suposición anterior y a ejercer sus facultades como maestros. O sea que, hoy él no se encuentra en esas condiciones de salud, disponibles para ello, como acabo de [inaudible] en su última evaluación es candidato a operación [inaudible] de espalda y unas condiciones del hombro, también del cuello, cervicales del cuello. Entonces este, pues esa es nuestra prueba. Nosotros contamos con todo el expediente médico, no sabemos cuál fue la determinación del médico que así entendió verdad, que con una sola evaluación lo podían, remover de su, retirar de su compensación y obviamente reinstalarlo a un oficio que no puede ejercer en este momento. |
| **Examinadora:** | Bien. Le pregunto a la parte Apelada ¿si interesa eh, presentar una breve teoría del caso y la prueba a presentarse? |
| **Lic. Maldonado:** | Básicamente [inaudible] el expediente [inaudible] solicitamos [inaudible] se hizo |

|                    | una evaluación en el expediente y determinó que estaba apto eh, para que fuera reinstalado. Obviamente cuando se le dio el beneficio de incapacidad, pues a él se le había indicado en la misma carta que se le iban a realizar cada dos años, y obviamente en una evaluación periódica se determinó, de que estaba listo para reinstalarse basado obviamente en la evaluación que se le hizo al, al, al pensionado, al señor David Velázquez. Eh, básicamente esa es nuestra, nuestra alegación y obviamente nosotros contrainterrogaremos al apelante. |
|---|---|
| **Examinadora:** | Bien. Adelante licenciado Pinzón. |
| **Lic. Pinzón:** | [inaudible] |
| **Examinadora:** | Como se sienta mejor, eh su representado. |
| **Lic. Pinzón:** | Eh, testigo díganos su nombre alto y claro. |
| **Sr. Velázquez:** | David Velázquez. |
| **Lic. Pinzón:** | ¿De dónde es usted, David Velázquez? |
| **Sr. Velázquez:** | En Mayagüez. |
| **Lic. Pinzón:** | Eh, ¿qué oficio tenía o que profesión ejercía? |
| **Sr. Velázquez:** | Maestro de Educación Física. |
| **Lic. Pinzón:** | ¿En qué escueta estaba ubicado? |
| **Sr. Velázquez:** | En la superior de Mayagüez. Pedro, Pedro Pérez, Perea. |
| **Lic. Pinzón:** | Eh, ¿cuánto tiempo estuvo ejerciendo en ese oficio, esa profesión? |
| **Sr. Velázquez:** | En la profesión como tal estuve aproximadamente nueve a diez años. |
| **Lic. Pinzón:** | Ok, eh, ¿a partir de cuándo dejo usted de ofrecer sus servicios como maestro de educación física? |
| **Sr. Velázquez:** | Aproximadamente como cinco años, llevo. |
| **Lic. Pinzón:** | ¿Sin trabajar? |
| **Sr. Velázquez:** | Sin trabajar. |
| **Lic. Pinzón[:]** | Eh, ¿qué eh, tareas realizaba usted como maestro de educación física? |
| **Sr. Velázquez:** | Múltiples tareas porque, eran los equipos, de vóleibol, trabajaba en vóleibol, con el equipo de sóftbol, baloncesto. Hay que pues mover equipos, [inaudible]. |
| **Lic. Pinzón:** | ¿Este tipo de tareas, conlleva algún tipo de eh, movimiento físico, trabajar con cosas pesadas? |
| **Sr. Velázquez:** | Sí, claro. |
| **Lic. Pinzón:** | ¿Me puedes describir algunas de ellas? |
| **Sr. Velázquez:** | Los tubos de montar las áreas de vóleibol, los equipos ya sea de baloncesto, de pelota, de sóftbol, mesas de ping-pong, que hay que mover. |

| | |
|---|---|
| **Lic. Pinzón:** | ¿Qué horario usted tenía, mientras estuvo trabajando ahí? |
| **Sr. Velázquez:** | De ocho a tres. |
| **Lic. Pinzón:** | La razón de que usted dejó de trabajar, [inaudible] funciones, ¿por qué? |
| **Sr. Velázquez:** | [inaudible] una caída por unas escaleras, y ahí fue que pues, me pas[ó] entonces todo lo de las cervicales, las lumbares y el hombro. También se [inaudible] un ojo y aquí en la nariz, pero lo que más grave fue con la espalda y tas cervicales [inaudible]. |
| **Lic. Pinzón:** | ¿Esa caída fue dentro de sus servicios como maestro de [inaudible]? |
| **Sr. Velázquez:** | Sí, correcto. |
| **Lic. Pinzón:** | Ok. A partir de eso, ¿quién lo estuvo atendiendo durante todo ese periodo de tiempo? |
| **Sr. Velázquez:** | Et Fondo del Seguro del Estado y cuando me traen aquí que no puedo caminar, voy al hospital, me inyectan. De hecho, este año ya me hicieron dos bloqueos y el año anterior me habían hecho dos bloqueos anteriores. |
| **Lic. Pinzón:** | Eh, ¿actualmente continúa ofreciendo, recibiendo los servicios del Fondo del Estado? |
| **Sr. Velázquez:** | Sí. |
| **Lic. Pinzón:** | Eh, ¿qué usted conozca que le ha dicho su médico eh, que lo atiende en el Fondo, su médico primario? |
| **Sr. Velázquez:** | [inaudible] me han dicho para operarme. Fue que yo en un momento dado como que, no estaba seguro si operarme y me dicen ahora de nuevo, tuve cita el 25 de este mes. |
| **Lic. Pinzón:** | ¿O sea hace dos días? |
| **Sr. Velázquez:** | Hace dos días. Que me iban a mandar de nuevo para, para el que opera a las personas, porque debo operarme. |
| **Lic. Pinzón:** | O sea que, ¿según este documento? |
| **Sr. Velázquez:** | Sí. |
| **Lic. Pinzón:** | [inaudible] |
| **Lic. Maldonado:** | [inaudible] ese documento. O sea, nosotros no lo evaluamos. |
| **Examinadora:** | ¿Qué documento es? |
| **Lic. Pinzón:** | Este es la cita que tuvo recientemente, que tiene que ver obviamente con todo el expediente médico de él. Lo que se supone que el médico. |
| **Lic. Maldonado:** | Si es que es una cita sí, pero sí es algún... |
| **Lic. Pinzón:** | Sí es la cita, la cita que tuve hace poco. |
| **Sr. Velázquez:** | En el expediente mío, está un cirujano [inaudible] me iba a operar por el Fondo también, anteriormente. |

| | |
|---|---|
| **Examinadora:** | Se hace constar para récord que la parte Apelante ha presentado a la parte eh Apelada y a esta Oficial Examinadora una nota de progreso, la comparación del Fondo del Seguro del Estado sobre una cita del Sr. David Velázquez Figueroa con fecha de 25 de junio de 2025. |
| **Lic. Pinzón:** | [inaudible] donde tiene prácticamente las recomendaciones y demás. |
| **Lic. Maldonado:** | A eso sí vamos a tener objeción, las recomendaciones porque no ha sido evaluado en este expediente. Las recomendaciones que hizo la Administración no se vio. |
| **Examinadora:** | Bien, ¿cuál sería la posición de la parte Apelante en cuanto a la objeción de la parte Apelada? |
| **Lic. Pinzón:** | Realmente discrepamos altamente en ello porque la decisión que se tomó fue una decisión arbitraria nunca se evaluó el expediente del compañero. Pero vamos a ver aquí en la prueba que estamos presentando. |
| **Examinadora:** | Bien. En este caso verdad, y se según la objeción se va a estar declarando Ha Lugar la objeción de la parte Apelada toda vez que el documento al este ser un Foro revisor no estuvo ante el Director Ejecutivo a la hora de tomar la determinación que el Foro ahora está revisando. |
| **Lic. Pinzón:** | Este le pregunto, ¿según su última cita que es lo que procede con su tratamiento? |
| **Sr. Velázquez:** | Operación porque ha sido [inaudible] la condición. |
| **Lic. Pinzón:** | Ok, le pregunto, ¿tiene alguna fecha eh cercana para una próxima cita, para un próximo tratamiento, algún tipo de evaluación para operación? |
| **Sr. Velázquez:** | Sí en agosto. |
| **Lic. Pinzón:** | En agosto. ¿Tiene fe, día, en específico? |
| **Sr. Velázquez:** | Octubre 24. |
| **Lic. Pinzón:** | ¿Octubre 24? |
| **Sr. Velázquez:** | [inaudible]. |
| **Lic. Pinzón:** | [inaudible] al mismo Fondo del Seguro del Estado? |
| **Sr. Velázquez:** | [inaudible]. |
| **Lic. Pinzón:** | ¿Siempre usted ha estado bajo tratamiento desde la primera vez que se retiró de su trabajo? |
| **Sr. Velázquez:** | Sí. |
| **Lic. Pinzón:** | Le quería preguntar eh, usted recibió verdad, recientemente una carta donde se |

| | |
|---|---|
| | le estaba solicitando que se reincorporara a su oficio anterior, ¿eso es correcto? |
| **Sr, Velázquez:** | Correcto. |
| **Lic. Pinzón:** | Eh, ¿por qué?, ¿por qué?, si le puede explicar a esta hono, a, la licenciada, ¿por qué le estaban: solicitando. esta reincorporación? |
| **Sr. Velázquez:** | Si porque la Junta me mando a hacer un examen [inaudible] en la cual pues, el doctor me mandó a hacer una serie de movimientos, levantando las manos, las piernas, [inaudible] pero él nunca verificó mi expediente como tal, y luego de esa evaluación fue que tomó la determinación como tal. |
| **Lic. Pinzón:** | Le pregunto, en esa cita, ¿cómo es que se llama el doctor? |
| **Sr. Velázquez:** | Doctor, no me acuerdo ahora mismo, creo que [inaudible] Seín creo que se llamaba no sé [inaudible]. |
| **Lic. Pinzón:** | Ese doctor cuándo usted estuvo en la cita, ¿le solicitó algún documento, le solicitó su expediente médico o tenía a contaba con el expediente médico suyo? |
| **Sr. Velázquez:** | No. |
| **Lic. Pinzón:** | ¿Qué sucedió si algo durante esa cita [inaudible]? |
| **Sr. Velázquez:** | Ah fue algo bien breve, fue algo como en diez minutos. Él me pasó a la oficina [inaudible] una serie de movimientos y eso fue todo. |
| **Lic. Pinzón:** | Eh, ¿en algún momento él le pidió explicación sobre sus condiciones de salud y padecimiento? |
| **Sr. Velázquez:** | No. [inaudible]. |
| **Lic. Pinzón:** | ¿Usted tenía con usted ese día, usted llevo de casualidad eh, el expediente médico suyo para la cita? |
| **Sr. Velázquez:** | No me lo requirieron. |
| **Lic. Pinzón:** | No te requirieron. Eh, ¿qué sucedió luego que él le hizo esta, esos exámenes eh, sí algo? |
| **Sr. Velázquez:** | Cuando me hizo tas pruebas, como. |
| **Lic. Pinzón:** | ¿Qué tipo de pruebas le hizo, discúlpeme? |
| **Sr. Velázquez:** | Pues como le acabo de mencionar, como que levanta las manos, mueve las piernas hacía arriba, hacía atrás las manos, apretar instrumentos, eso fue todo. |
| **Lic. Pinzón:** | ¿Eso fue todo lo que él utilizó? |
| **Sr. Velázquez:** | Sí. |
| **Lic. Pinzón:** | [inaudible] ¿Usted tuvo alguna otra cita luego de esta primera cita con él? |

| | |
|---|---|
| **Sr. Velázquez:** | No, es la única que he tenido con él. |
| **Lic. Pinzón:** | ¿Nunca anteriormente ese médico eh antes y después? ¿Cuántas veces durante el periodo de los cinco años usted tue a una cita con este médico? |
| **Sr. Velázquez:** | Nunca. |
| **Lic. Pinzón:** | Durante la entrevista con él, aparte de las evaluaciones que hizo, ¿qué usted le informó si algo? |
| **Sr. Velázquez:** | Él no me preguntó nada. A No hubo ningún tipo de comunicación. |
| **Lic. Pinzón:** | Y cuando terminó usted de hacer su análisis que él le realizó, ¿qué sucedió si algo? |
| **Sr. Velázquez:** | Nada, que era todo que me podía ir. |
| **Lic. Pinzón:** | ¿No le, le brindó algún tipo de, que tipo de información le brindó él? |
| **Sr. Velázquez:** | No, ya eso era información que sería evaluada. |
| **Lic. Pinzón:** | Le pregunto David eh, ¿el expediente médico, suyo, quien además de usted verdad, ha tenido la oportunidad de recibirlo y poder evaluarlo? |
| **Sr. Velázquez:** | Yo se lo envié a la Junta. |
| **Lic. Pinzón:** | La Junta tuvo la oportunidad de. |
| **Sr. Velázquez:** | Esa fue después que ya me habían dicho que [inaudible]. |
| **Lic. Pinzón:** | Ok. ¿En qué momento si alguno, que usted recuerde? |
| **Sr. Velázquez:** | ¿Cómo? |
| **Lic. Pinzón:** | ¿En qué momento usted le envío el expediente suyo a Retiro? |
| **Sr. Velázquez:** | Cuando [inaudible] la apelación para el [inaudible]. |
| **Lic. Pinzón:** | ¿Usted quiere decir que ya ellos tienen conocimiento de este expediente médico que consta en el récord? |
| **Sr. Velázquez:** | Correcto. |
| **Lic. Pinzón:** | [inaudible] para récord que el expediente médico del señor David debe de tenerlo tanto el compañero como la distinguida licenciada. Eh, para resumir ya que ellos cuentan con él, ¿qué dice ese informe verdad, brevemente, que usted tenga entendimiento? |
| **Sr. Velázquez:** | En el 2002 yo era candidato a operación [inaudible] la [inaudible] y todo para proceder, y en ese momento tuve un poco de tensión y luego me sentí un poco mal, no pude ir a hacerme la operación. |
| **Lic. Pinzón:** | No pudieron operarlo. |

| | |
|---|---|
| **Sr. Velázquez:** | Sí. Después ese doctor, volvió y me aconsejó de operarme, pero salió del Fondo. Ya no está trabajando con el Fondo y entonces pues el proceso en el Fondo es un poco lento. Y ahora estamos de nuevo para, que me operen. |
| **Lic. Pinzón:** | Mientras este proceso ha ido, ¿qué tipo de tratamiento usted está recibiendo? |
| **Sr. Velázquez:** | A mí me han inyectado, me han dado bloqueo, tres bloqueos. Anteriormente me han dado uno, que serían cuatro bloqueos los que me han dado, dos cervicales y dos lumbares. Me han inyectado en el Fondo un sinnúmero de veces, porque algunas veces estoy que no puedo ni caminar, tengo que ir al Fondo. Hospital privado y luego al Fondo, pa' inyectarme. |
| **Lic. Pinzón:** | Eh, ¿usted asiste regularmente al Fondo? ¿Cuándo, cada cuánto tiempo usted asiste al Fondo? |
| **Sr. Velázquez:** | Bueno yo llevo en el Fondo trece años, porque, cada vez que ellos me dan más citas yo tengo que ir por eso mismo, para evaluaciones. |
| **Lic. Pinzón:** | ¿Cada cuánto aproximadamente? |
| **Sr. Velázquez:** | Cada dos meses prácticamente, máximo tres. |
| **Lic. Pinzón:** | El, le pregunto, ¿al día de hoy el Fondo [inaudible] a dar? |
| **Sr. Velázquez:** | No. |
| **Lic. Pinzón:** | ¿Usted tiene algún CT para regresar al trabajo? |
| **Sr. Velázquez:** | No, en esa parte no estoy seguro porque ya no estoy trabajando, llevo meses sin cobrar. |
| **Lic. Pinzón:** | ¿No te han dado ningún CT, ni te han dado ningún visto bueno para que usted regrese a laboral? |
| **Sr. Velázquez:** | No. |
| **Lic. Pinzón:** | No tenemos más preguntas. |
| **Examinadora:** | Bien. Le pregunto a la parte Apelada, ¿si interesa realizar un contrainterrogatorio? |
| **Lic. Maldonado:** | Sí. Eh, [inaudible] eh, señor David, le vamos a estar haciendo una serie de preguntas. Eh, básicamente me gustaría comenzar, ¿nos podría describir un día normal de su día? |
| **Sr. Velázquez:** | ¿Un día normal de mi día? |
| **Lic. Maldonado:** | Sí. |
| **Sr. Velázquez:** | Pues en casa. Llevo la nena a la escuela. Y estoy por ahí por el área mayormente, por donde vivo. |
| **Lic. Maldonado:** | ¿Y qué usted hace por el área? |

**Sr. Velázquez:** Nada, en casa mayormente, la mayoría estoy en casa mayormente.

**Lic. Maldonado:** ¿Está por el área [inaudible] por su casa?

**Sr. Velázquez:** El área cerca de mi casa.

**Lic. Maldonado:** ¿Caminando?

**Sr. Velázquez:** Camino a veces sí, porque me lo recomiendan también.

**Lic. Maldonado:** ¿Se levanta, puede asearse usted por su cuenta, se cepilla los dientes usted, se viste, camina, se sienta, duerme bien?

**Sr. Velázquez:** Sí. No duermo muy bien tengo que estar [inaudible] medicamentos para dormir, por el dolor, que a veces muchas veces me levanto por las noches porque estar mucho tiempo acostado también me afecta. Puedo estar sentado. [inaudible] no puedo estar sentado todo el día tampoco.

**Lic. Maldonado:** ¿Se puede poner las medias, los zapatos?

**Sr. Velázquez:** A veces puedo y a veces no puedo, a veces me lo tienen que poner porque no puedo doblarme, [inaudible].

**Lic. Maldonado:** Las veces que lo he visto aquí no lo he visto con bastón, ¿así que no utiliza bastón?

**Sr. Velázquez:** [inaudible] bastón, cuando estoy mejor, pues trato de no utilizarlo.

**Lic. Maldonado:** ¿Cuáles son sus pasatiempos?

**Sr. Velázquez:** ¿Pasatiempos? Ver, televisión, ir a los juegos de la hija mía.

**Lic. Maldonado:** ¿Qué juega su hija?

**Sr. Velázquez:** Baloncesto.

**Lic. Maldonado:** ¿Cuántos pisos tiene su residencia?

**Sr. Velázquez:** Es terrera.

**Lic. Maldonado:** ¿Tiene algún tipo de escalera?

**Sr. Velázquez:** No.

**Lic. Maldonado:** ¿Nunca ha, ha tenido fractura?

**Sr. Velázquez:** ¿Cómo?

**Lic. Maldonado:** ¿Ha tenido alguna fractura de [inaudible] de esos eventos, ha tenido, de los eventos que obviamente que usted recibió los beneficios, sufrió alguna fractura?

**Sr. Velázquez:** Tengo la cervical.

**Lic. Maldonado:** No fra, ¿si sufrió alguna fractura?

**Sr. Velázquez:** ¿[inaudible] los huesos?

**Lic. Maldonado:** Sí.

| | |
|---|---|
| **Sr. Velázquez:** | No solamente son las cervicales y lumbares. |
| **Lic. Maldonado:** | Las cervicales que tiene algún tipo de, no es que están, tiene algún tipo de condición en general. |
| **Sr. Velázquez:** | Sí. |
| **Lic. Maldonado:** | ¿Ha estado hospitalizado a consecuencia de la, de su, de su tratamiento? |
| **Sr. Velázquez:** | Sí. |
| **Lic. Maldonado:** | ¿Le han dado tratamiento de fisioterapia, o sea le han dado terapia? |
| **Sr. Velázquez:** | Más de veinte terapias me han dado. |
| **Lic. Maldonado:** | ¿Despúes de tratamiento como se sintió? |
| **Sr. Velázquez:** | Mal. [inaudible] los bloqueos. |
| **Lic. Maldonado:** | ¿[inaudible] me dijo que se sentía mejor? ¿Ahora se siente bien? |
| **Sr. Velázquez:** | Eh, no. En un momento dado como estaba tan mato de las cervicales, me bloquearon y me alivió un poco el dolor, pero todavía, porque como me dijo el médico hace dos días, eso me alivia el dolor porque eso como que me duerme, pero a la vez que se va el efecto pues vuelve el dolor y persiste de nuevo. [Inaudible]. |
| **Lic. Maldonado:** | ¿[Inaudible] desde el 2016, diez años para operarse? |
| **Sr. Velázquez:** | ¿Usted ha [inaudible] en el Fondo? Es bien, se tardan bastante. |
| **Lic. Maldonado:** | Yo lo sé, no he estado, no quiero estar tampoco, solamente le pregunto este. |
| **Sr. Velázquez:** | No, lo digo si has estado. |
| **Lic. Maldonado:** | ¿Y me indicó que en un momento dado sí hubo, y usted desistió? |
| **Sr. Velázquez:** | Si porque estaba enfermo y cuando uno están enfermo no se puede operar, y estaba un poco como nervioso porque no sabía que hacer [inaudible]. Pero ya por estar enfermo no me operan. |
| **Lic. Maldonado:** | ¿Eso fue en el 22? |
| **Sr. Velázquez:** | Sí. |
| **Lic. Maldonado:** | ¿Usted recuerda en algún momento allá para el 15 de [inaudible] de 2024, antes de que, usted nos dice que fue ahora a una evaluación con el doctor Seín, dice que sí que fue? |
| **Sr. Velázquez:** | ¿Ese es el doctor [inaudible]? |
| **Lic. Maldonado:** | Eh, sí. |
| **Sr. Velázquez:** | Sí, la única vez que he ido es esa vez. |
| **Lic. Maldonado:** | Este eh, previo a eso, no recuerdo ahora tengo la carta, pero no, lamentablemente |

| | |
|---|---|
| | [inaudible] del doctor Seín, sé que está por ahí, pero si usted dice que fue no tengo ningún problema con eso. Pero previo a eso, el 15 de julio de 2024, la Junta de Retiro es cuando le indica que se va a reevaluar su caso, como ya se le había dicho, y que tenía que someter durante treinta días, llenar un formulario y "someter si había alguna actualización de sus informes médicos. |
| **Sr. Velázquez:** | No, ahí lo que [inaudible] la Junta lo me escribió fue que fuera, a un, no sé si fue el mismo, la misma, el mismo Seín, otra persona que pudiera hacerme ese estudio, que, fuera, de mi preferencia. |
| **Lic. Maldonado:** | Aquí yo tengo una 15 de julio de 2024. Dice profesor David Velázquez Figueroa. Pregunto si esta esa su calle, ¿25 calle Cristo Rey, Isabela Puerto Rico 00662? |
| **Sr. Velázquez:** | Correcto. |
| **Lic. Maldonado:** | Aquí dice, una carta que te envía Yamille Lopés Muriel, Técnico en Determinación de Incapacidad. Aquí dice: "para poder reevaluar su caso, es necesario nos someta evidencia médica actualizada de las condiciones de salud por las cuales le fueron otorgados los beneficios de pensión por incapacidad provisional. A esos efectos estamos enviando los siguientes formularios para que sean cumplimentados por su médico" y le envía el formulario Espina y Range of Motion. "Se advierte que el término para someter esta evidencia médica es, será dentro de los próximos treinta días." ¿Sometió o no sometió el documento? |
| | [inaudible] pues sí lo sometí. No sé si es que ahí [inaudible] varias cartas. |
| **Lic. Maldonado:** | Lo que pasa es que no, no, a preguntas del compañero dijo que no había sometido que los documentos que sometió después de la evaluación de Seín. |
| **Sr. Velázquez:** | Por eso te estoy diciendo que estos documentos se entregaron para la apelación. El documento que yo pienso que usted me está preguntando es el examen, y si es el examen, ellos me dijeron que yo buscara el médico para que hiciera el examen y como yo no tengo un médico, los del Fondo no llenan ningún tipo de papel, de lo que ustedes envían, pues ustedes me otorgaron un médico a mí. Que fue el que me hizo la prueba. |
| **Lic. Maldonado:** | Lo que pasa que, ahora usted [inaudible] esos documentos. |
| **Sr. Velázquez:** | Eso lo tienen ustedes hace tiempo ya. |
| **Lic. Maldonado:** | Sí, pero los sometió después de la evaluación y eso debió haberse sometido aquí en este momento. Cuando se le están pidiendo. |
| **Sr. Velázquez:** | Cuando me pidieron lo, cuando me pidieron [inaudible]. |

| | |
|---|---|
| **Lic. Maldonado:** | En ese momento no sometió nada, [inaudible] en este momento no sometió nada. |
| **Sr. Velázquez:** | Es que no entiendo lo que usted me está preguntando, si es lo del examen, porque cuando me dijeron pa' hacerme el examen no me pidieron tos documentos. Los documentos me lo pidieron después que ustedes me hicieron examen, fue que me pidieron los documentos. |
| **Lic. Maldonado:** | Fue antes de, del, este documento es antes de la, de la, de la cita con Seín, con el doctor Seín, este documento es antes. |
| **Sr. Velázquez:** | Pues ahí yo, yo entendía, no recuerdo en ningún momento documento, expediente del, del Fondo. |
| **Lic. Maldonado:** | Para eso, digo, no, yo creo, la pregunta es si [inaudible] expediente del Fondo, yo no, no tengo conocimiento de cómo trabaja el Fondo. Aquí se le envía esta carta, ¿dentro del periodo de treinta días sometió o no sometió el documento? |
| **Sr. Velázquez:** | ¿Eso es para lo del examen de Seín? |
| **Lic. Maldonado:** | No, esto es antes del examen Seín, después hay otra, hay otro documento, que es que le dice a usted que vaya donde Seín. |
| **Sr. Velázquez:** | Ok, pues si eso es antes no sometí el documento, porque, me habían pedido que fuera, el documento que me están pidiendo es el examen, con el médico que yo buscara. Pero al no tener el médico, pues no sometí ningún documento porque yo no tengo médico que me dé documento para yo someterlo. |
| **Lic. Maldonado:** | O sea, lo usted, quiere de decir es que solamente va a los médicos del, del Fondo. Y el Fondo. |
| **Sr. Velázquez:** | [inaudible] no me podían dar nada, no me llena ningún tipo de documento. |
| **Lic. Maldonado:** | Después de eso es que viene la evaluación de, la, la carta, que lo cita para Seín, que usted asiste. |
| **Sr. Velázquez:** | Exacto. |
| **Lic. Maldonado:** | Dice que te hizo, toda esa serie de exámenes de movimiento, básicamente. |
| **Sr. Velázquez:** | Correcto. |
| **Lic. Maldonado:** | Le pregunto, ¿usted vio cuando Seín hizo, el informe? |
| **Sr. Velázquez:** | No, él me dijo que eso era allá con la Junta. |
| **Lic. Maldonado:** | ¿No vio si tenía tampoco el expediente? ¿Usted asume que no lo tenía? |
| **Sr. Velázquez:** | No porque no me habían pedido el expediente para que se lo llevara, eh, a él. |
| **Lic. Maldonado:** | ¿[inaudible] asume? Si el, si el, si el expediente se lo había dado, ¿usted no sabe sí el expediente había llegado allí? |

|  |  |
|---|---|
|  | Porque Retiro se lo había enviado, ¿o usted conoce si se le había dado? |
| **Sr. Velázquez:** | No creo que lo pueda tener porque yo no había enviado el expediente a Retiro, a menos que sea los dos años previos cuando a mí me aprobaron, Retiro me aprobó la incapacidad, a menos que haya sido ese expediente el que le hayan dado. Pues ese pudo haber sido el que tenía. |
| **Lic. Maldonado:** | Entonces que tenía ese expediente. |
| **Sr. Velázquez:** | [inaudible]. |
| **Lic. Maldonado:** | Le pudieron, vamos a decirlo así. |
| **Sr. Velázquez:** | Si porqué. |
| **Lic. Maldonado:** | Le pudieron haber enviado ese expediente, y para eso fue que te estoy hablando de la, de la carta del 15 de julio, que sometieran los otros documentos, que no sometió, según lo que nos dice. Y todo ese expediente usted, si se lo enviaron a Seín, usted desconoce. Pero no pudieron habérselo enviado, ¿verdad? ¿Pero usted no puede decir si sí, o si no? |
| **Sr. Velázquez:** | Lo que pasa es que cuando yo someto los documentos nuevos, los someto cuando ya ustedes. |
| **Lic. Maldonado:** | David, ¿usted no sabe si Retiro se los envío, sí o no? ¿No puede garantizarlo? |
| **Sr. Velázquez:** | No puedo garantizarlo. |
| **Lic. Maldonado:** | No puede garantizarlo si lo tenía o no. Porque no tiene conocimiento, usted puede asumir. |
| **Sr. Velázquez:** | Bueno, como te repito de nuevo, si eran tos documentos que yo entregué. |
| **Lic. Maldonado:** | La pregunta es si usted tampoco tenía conocimiento, no es, la pregunta es ¿si tenía o no tenía conocimiento de si él tenía el expediente? Si usted estaba cien porciento seguro de que él no tenía el expediente. Si usted puede garantizarlo. |
| **Sr. Velázquez:** | Yo no vi ningún expediente allí. |
| **Lic. Maldonado:** | No lo vio, pero no puede garantizar que posiblemente cuando va a hacer el informe lo tenía. |
| **Sr. Velázquez:** | Ahí desconozco. |
| **Lic. Maldonado:** | Exacto. |
| **Sr. Velázquez:** | Porque él llenó, cuando me estaban haciendo las pruebas fue que llenó los papeles. |
| **Lic. Maldonado:** | [inaudible] no, no tengo más preguntas. |
| **Sr. Velázquez:** | Ok. |
| **Lic. Maldonado:** | Básicamente no te voy que hacer más preguntas. Licenciada. |

| | |
|---|---|
| **Examinadora:** | Bien, le pregunto a la parte Apelante ¿si interesa hacer un redirecto? |
| **Lic. Pinzón:** | Sí le voy a hacer una pregunta sencillita. |
| **Examinadora:** | Adelante licenciado. |
| **Lic. Pinzón:** | Con relación a lo que, a lo que preguntó el compañero sobre una, esa carta que él te está alegando que recibiste verdad, que se supone que recibiste, donde estaba solicitando este, una serle de documentos, ¿realmente tu recibiste esa carta? |
| **Sr. Velázquez:** | No yo lo que recibí fue una carta que me decía que me evaluaba un médico de mi preferencia, [inaudible] una evaluación. Al yo no, al yo no tener la evaluación con un médico [inaudible] que me pudiera hacer la evaluación, ellos me [inaudible] que fuera a ese médico. |
| **Lic. Pinzón:** | Ok, entonces a partir de que escogieron, ese médico que ¿quién escoge ese médico? |
| **Sr. Velázquez:** | La Junta. |
| **Lic. Pinzón:** | Eh, una vez tú fuiste a esa cita, te pregunto, ¿tu cumpliste con todo lo que te requirieron? |
| **Sr. Velázquez:** | Sí. |
| **Lic. Pinzón:** | Una vez fuiste a ésa cita, el doctor Seín, el doctor que se llama, eh, a preguntas del, él te pregunta si tenías conocimiento, si él tenía este expediente. |
| **Sr. Velázquez:** | Este expediente él no lo tenía porque no se le había otorgado. |
| **Lic. Pinzón:** | Vuelo y te pregunto. |
| **Sr. Velázquez:** | Ellos no me habían dicho que yo sometiera. |
| **Lic. Pinzón:** | En otras palabras, para recapitular te pregunto, ¿qué entiendes que utilizó el doctor Seín para emitir su juicio? |
| **Sr. Velázquez:** | Pues solamente. |
| **Lic. Maldonado:** | [inaudible] objetar, porque él no entiende. Él tiene que saber o no, si lo que utilizó o no [inaudible]. |
| **Lic. Pinzón:** | Entonces, ¿qué él te evaluó? |
| **Sr. Velázquez:** | La prueba porque, no tenía las placas mías, no me las pidió en ningún momento, no me pidió nada. Solamente me hizo una evaluación, como te dije horita de cinco a diez minutos, te aprieta. |
| **Lic. Pinzón:** | ¿Qué de tu expediente médico si algo, tenía el señor Seín? |
| **Sr. Velázquez:** | En aquel momento, yo creo nada. |
| **Lic. Pinzón:** | No tenemos más preguntas. |

| | |
|---|---|
| **Examinadora:** | Le pregunto a la parte Apelante si, perdona a la parte Apelada si interesa realizar un, eh, recontrainterrogatorio. |
| **Lic. Maldonado:** | No, básicamente [inaudible]. |
| **Examinadora:** | Le pregunto a la parte Apelante si interesa realizar una argumentación final y solicitud a este Foro. |
| **Lic. Pinzón:** | Sí, este, aquí estamos hablando de una compensación que se otorgó a base de un examen bien realizado de un informe de unas evaluaciones que se le realizaron inicialmente al señor David Velázquez, donde la Junta determinó que la persona no estaba apta para trabajar, por lo que le asignó una buena compensación. Buena o mala dale, sino una compensación. Eh, en ese momento se utilizó un informe médico, un expediente médico que así lo determinó. Sin embargo, cuatro o cinco años después, un médico que desconoce totalmente la situación del señor eh, David Velázquez, que no tiene en su poder ningún expediente médico del señor Velázquez, que nunca lo visitó, que nunca lo ha visto, nunca le ha realizado ningún tipo de examen, no ha visto placas, no tiene récord médico de él, determina que el señor David Velázquez, contrario a todo lo que dicen los especialistas que lo ven, que en el informe está, determina que él puede continuar sus laborales regulares de lo que es un maestro de educación física, que sabemos que la palabra lo dice, educación física. O sea que tiene impacto físico directo con su cuerpo. Cuando tiene condiciones de salud, cervicales, lumbares, cuello, hombro, se encuentra bajo tratamiento y es candidato a operación y un médico, qué no se encuentra el día de hoy aquí. Porque aquí estamos determinando que dijo eso, él no está aquí, él no lo ha afirmado, Estamos confiando en lo que dice el compañero. Determinó que él estaba apto para trabajar. ¿Cuál fue la base, con qué fundamento, con qué informe? Sin embargo, cuando fueron aprobarle la compensación, si tuvo récord médico. Y utilizaron un récord médico, un expediente médico para poder otorgar esa compensación. Pero para quitarla, no existe un expediente médico. Simplemente dos "jumpingjack", dos "push-up" y váyase para su casa que usted está bien, vaya a trabajar. Lamentablemente esa no es la manera correcta de evaluar un candidato que hoy, es candidato a operación. Que lo, lo vamos a traer, lo podemos reintegrar y dos semanas está de nuevo, lo volvemos a pasar por ese proceso. Yo entiendo que, si la vamos a quitar unos beneficios que tiene el señor David Velázquez, tiene que ser de la manera adecuada y correcta. Se tiene que hacer un, el, el médico tuvo verdad porque, que realizar un análisis de esto que tenemos aquí. Porque yo no soy médico, el compañero también, yo sé que usted tampoco, pero una persona que es candidata a operación de las vértebras, no me parece que sea la persona idónea para estar ejerciendo las funciones de maestro de educación física. |

| | |
|---|---|
| **Examinadora:** | Tengo una pregunta y sólo para aclarar, ¿cuándo usted dice esto que está aquí?, y para que lo refleje el récord, ¿es el expediente médico? |
| **Lic. Pinzón:** | El expediente médico del señor David Velázquez. |
| **Examinadora:** | ¿Qué se presentó en conjunto con la apelación? |
| **Lic. Pinzón:** | Que se presentó en conjunto con la apelación. |
| **Examinadora:** | Bien, continúe licenciado. |
| **Lic. Pinzón:** | Eso sería todo por nuestra parte. |
| **Examinadora:** | Bien. Le pregunto a la parte Apelada, ¿si interesa realizar una argumentación final? |
| **Lic. Maldonado:** | Sí, básicamente. Disculpe, sí. Esos documentos se debieron haber presentado no ahora, se debieron haber presentado antes de haberse determinado la, [inaudible] la determinación. Pero como él mismo dijo, como el mismo pues Apelante dijo, pues obvió, te llegó una carta, y la obvió. Eh, le llegó a, una citación a un, todos los procedimientos, hasta el seguro social, se hace, se contrata a un profesional externo, se evalúa, [inaudible] es imposible que no tenga obviamente [inaudible] se le envía el expediente. Que él lo haya visto o no, son otros [inaudible]. El compañero dice que tiene que confiar en lo que yo digo, ¿pues nosotros tenemos también que confiar en lo que ellos dicen? Básicamente aquí está el expediente, que hubo una persona que está, hubo una persona con las capacidades [inaudible] yo tampoco lo tengo, con la capacidad lo evaluó independiente, [inaudible] la Junta de Retiro lo evaluó y determinó que estaba apto a reinstalarse. Simplemente aquí se le envió la carta que tiene que reinstalarse, al al cuerpo. Más allá de eso, no tengo nada más que decir. |
| **Examinadora:** | Bien. ¿Ambas partes someten su caso? |
| **Lic. Pinzón:** | Nos gustaría este argumentar, una segunda argumentación. Esto es sencillo, Eh, aquí nosotros no tenemos ningún informe del señor, este del doctor Seín. Sin embargo, tenemos un expediente médico que diferente al médico está eh, avalando a especialistas que han atendido al señor Velázquez. ¿Dónde está ese famoso expediente que supuestamente el doctor Seín tiene? Ahí no había ningún informe, el simplemente refirió y la Junta decidió. Pero aquí yo en mis manos, en mi poder, yo nunca he visto un informe del doctor Seín que diga que el señor Velázquez está apto para trabajar. O que diga cuales son las condiciones de salud, estamos hablando en suposición. Claro que yo tengo que confiar en tu palabra, entiendo que eres una persona de respeto, pero tú no tienes nada para avalar lo que estás diciendo, yo sí tengo un expediente y un récord médico |

| | |
|---|---|
| | para avalar lo que estoy diciendo. Esto no me lo inventé, esto está aquí. |
| **Examinadora:** | ¿Algo más que añadir? |
| **Lic. Maldonado:** | Básicamente el informe del doctor Seín se lo entregaron a la Junta de Retiro y está en el expediente. |
| **Examinadora:** | Sepan tas partes que el expediente que este Foro va a estar evaluando, está disponible para que ambas partes puedan consultarlo, en la Secretaría del Foro. Es el expediente verdad, que incluye toda la evidencia que se ha recopilado desde la solicitud inicial verdad, del Apelante y toda la documentación que se ha generado de la parte administrativa, hasta llegar verdad a, a, a este momento. Así que en cualquier momento que las partes lo interesen revisar, está disponible en la Secretaría del Foro. Eh, le pregunto nuevamente a las partes, si ya luego de argumentada eh, sus posiciones, ¿dan por sometido su caso? |
| **Lic. Pinzón y Lic. Maldonado:** | Damos por sometido, |
| **Examinadora:** | Bien. Habiendo ambas partes sometido su caso, eso sería todo por la tarde de hoy. Ésta Oficial Examinadora lo que rinde es un informe con una recomendación. Esa recomendación verdad, se somete al pleno de la Junta de Retiro, y la Junta de Retiro verdad es que emite la determinación final en este caso, Esa resolución le va a estar siendo notificada a las partes, mediante correo electrónico si fue ese el mecanismo que solicitaron para la notificación de las determinaciones del Foro. [inaudible] así, quedan excusados de sala, que pasen buen resto del día. |

En resumen, el foro administrativo concluyó que Velázquez Figueroa había superado su incapacidad, según la evaluación realizada y el informe emitido por el médico examinador. Así pues, ordenó que el recurrente sea reinstalado al servicio público. Concluyó, asimismo, que las condiciones musculoesqueletales, por sí solas o en combinación con las demás afecciones, no cumplían con la severidad exigida por los Códigos Médicos para que éste sea beneficiario de una pensión por incapacidad.

En desacuerdo, el 2 de septiembre de 2025, el recurrente presentó una "*Moción de Reconsideración*"[5], en la que alegó que la Junta de Retiro realizó una determinación sin fundamento y en menoscabo del debido proceso de ley. Específicamente, adujo que, hasta esa fecha, no había

---

[5] Apéndice Núm. 6 de la Entrada Núm. 1 del SUMAC TA.

tenido acceso al informe realizado por el aludido médico, con la correspondiente evidencia y hechos que fundamentaran la determinación tomada. Sostuvo, que la prueba que presentó nunca se tomó en consideración, ni se discutió en la "*Resolución*" emitida. Además, alegó que la prueba principal con la cual la Junta de Retiro fundamentó su decisión fue el alegado informe realizado por el referido Doctor, el cual nunca estuvo disponible para ser interrogado. Ante ello, sostuvo que la evidencia presentada es prueba de referencia inadmisible.

Inconforme, el 16 de octubre de 2025, el recurrente compareció ante nos mediante un "*Recurso de Revisión Judicial*"[6] y esbozó los siguientes señalamientos de error:

> 1. Entendemos que erró la Honorable Junta de Retiro del Gobierno de Puerto Rico al haber realizado una determinación sin fundamento en pleno incumplimiento con el debido proceso de ley.
>
> 2. De igual forma, erró la Honorable Junta de Retiro del Gobierno de Puerto Rico al Notificar la Acción Tomada contraria a nuestro ordenamiento jurídico apartándose de las garantías tradicionalmente reconocidas, como la concesión a una vista imparcial, una oportuna y adecuada notificación, el derecho a ser oído, a confrontarse con los testigos, a presentar prueba oral y escrita a su favor, y la presencia de un adjudicador imparcial.
>
> 3. Además, erró la Honorable Junta de Retiro del Gobierno de Puerto Rico al no presentar el informe del alegado Consultor Externo en el cual se basó la presente determinación.
>
> 4. La determinación tomada fue al amparo de un alegado informe que según la Junta de Retiro fue realizado por Dr. Rafael Seín, quien no estuvo presente ni disponible para ofrecer su testimonio ni ser interrogado por la parte apelante, por lo que la decisión tomada fua basada en prueba de referencia, la cual es inadmisible como regla general en los procedimientos judiciales y administrativos y contrario a nuestro ordenamiento jurídico, afectando la imparcialidad al debido proceso de ley, que además de ser contrario a derecho es una violación crasa al derecho constitucional y fundamental del debido proceso.

Mediante "*Resolución*" emitida el 21 de octubre de 2025, le ordenamos a la Junta de Retiro que presentara su alegato en oposición y una copia certificada del expediente administrativo número 2024-0027. En cumplimiento de ello, el 20 de noviembre de 2025, la Junta de Retiro presentó su "*Alegato en Oposición*" y copia certificada del expediente administrativo.

---

[6] Entrada Núm. 1 del SUMAC TA.

Con el beneficio de la comparecencia de ambas partes, procedemos a esbozar el marco doctrinal aplicable a la controversia que hoy nos ocupa.

**II.**

**A.      Revisión Judicial y la Deferencia a las Decisiones Administrativas:**

La revisión judicial permite a los tribunales garantizar que las agencias administrativas actúen dentro de las facultades delegadas por ley, cumplan con los mandatos constitucionales aplicables y asegura que los ciudadanos tengan un foro al cual recurrir para vindicar sus derechos. *Voilí Voilá Corp. et al v. Mun. Guaynabo,* 213 DPR 743, 753 (2024). En lo atinente, en el ámbito administrativo, los tribunales apelativos deben conceder una gran deferencia a las decisiones emitidas por las agencias administrativas debido a la vasta experiencia y conocimiento especializado en los asuntos que les han sido encomendados. *Otero Rivera v. USAA Fed.* Savs. Bank, 214 DPR 473, 484 (2024); *Asoc. Fcias. v. Caribe Specialty et al. II.,* 179 DPR 923, 940 (2010); véanse también, *Martínez v. Rosado*, 165 DPR 582, 589, (2005); *Otero v. Toyota*, 163 DPR 716, 727 (2003).

Ahora bien, nuestro Tribunal Supremo ha reiterado que la deferencia reconocida a las decisiones de las agencias administrativas habrá de ceder, solamente, cuando la misma no esté basada en evidencia sustancial, cuando la agencia ha errado en la aplicación de la ley y cuando su actuación resulte ser una arbitraria, irrazonable o ilegal. *Pérez López v. Depto. Corrección*, 208 DPR 656, 673 (2022); *The Sembler Co. v. Mun. de Carolina*, 185 DPR 800, 822 (2012). En el escenario particular de las cuestiones de derecho, el Tribunal Supremo ha proferido las siguientes expresiones:

> Hoy hacemos eco a las palabras del foro federal y concluimos que la interpretación de la ley es una tarea que corresponde inherentemente a los tribunales. Así, enfatizamos la necesidad de que los foros judiciales, en el ejercicio de su función revisora, actúen con el rigor que prescribe la LPAU, supra. Como corolario, al enfrentarse a un recurso de revisión judicial proveniente de una agencia administrativa, será el deber de los tribunales revisar las conclusiones de derecho en todos sus aspectos. No guiados por la deferencia automática a la que alude el DACo, sino que por los mecanismos interpretativos propios del Poder Judicial. *Vázquez y otro v. Consejo de Titulares y Junta de Directores del Condominio Los Corales y otros,* 2025 TSPR 56.

Por otra parte, nuestro Más Alto Foro ha sido enfático en que las determinaciones de hechos de organismos y agencias públicas tienen a su favor una presunción de regularidad y corrección, que debe ser respetada mientras la parte que las impugne no produzca suficiente evidencia para derrotarla. *OEG v. Martínez Giraud,* 210 DPR 79, 89 (2022); *Camacho Torres v. AAFET*, 168 DPR 66, 91 (2006); *véanse también*, *Otero v. Toyota*, supra; *Fac. C. Soc. Aplicadas, Inc. v. C.E.S.*, 133 DPR 521, 532 (1993).

**B.      Sistema de Retiro para Maestros:**

En virtud de la Ley del Sistema de Retiro para Maestros del Estado Libre Asociado de Puerto Rico, Ley Núm. 160-2013, según enmendada, 18 LPRA sec. 393 et seq., ("Ley Núm. 160-2013"), se creó el aludido sistema de retiro compuesto por un Programa de Beneficios Definidos y un Programa de aportaciones definidas. 18 LPRA sec. 394. Entre las personas sujetas al sistema de retiro establecido se encuentran los maestros en servicio activo y los maestros y empleados pensionados. 18 LPRA sec. 395. En lo que aquí concerniente, el Artículo 4.5 de la precitada ley, establece la normativa relativa al retiro por incapacidad. Dicho artículo lee como sigue:

> (a) Hasta el 31 de julio de 2014, el participante en servicio activo que solicite una pensión por incapacidad, tendrá derecho a que se le conceda una renta anual vitalicia cuya cantidad será igual a lo establecido en el Artículo 4.6.

> (b) A partir del 1ro de agosto de 2014, el Sistema le concederá una pensión por incapacidad de acuerdo al Artículo 4.6 a todo participante activo que se incapacite después de haber servido cinco (5) años, ya sea como consecuencia del trabajo o cuando la incapacidad no tenga relación con su trabajo.

> (c) El retiro por incapacidad podrá ser concedido a solicitud del participante o a solicitud de la autoridad nominadora, y mediante la aprobación por el Sistema.

> **(d) El participante será examinado por un médico autorizado para ejercer la profesión, designado por el Sistema, quien rendirá un informe al Director Ejecutivo sobre el particular.**

> (e) Los participantes que entren al Sistema a partir del 1ro de agosto de 2014, tendrán derecho a los beneficios por incapacidad que se establecen en el Capítulo 5 de esta Ley. (Énfasis suplido). 18 LPRA sec. 396e.

Por su parte, el Artículo 4.7 regula los escenarios en que se suspenderán las pensiones por incapacidad y el proceso de examinación de la persona pensionada. Este artículo lee como sigue:

**(a) Los pensionados por incapacidad del Sistema dejarán de recibir la pensión tan pronto cese la incapacidad** o reingresen al servicio gubernamental.

(b) También cesará la pensión por incapacidad de los que se dediquen a ocupaciones no gubernamentales por las que reciban remuneración mayor de mil (1,000) dólares mensuales.

**(c) Los pensionados por incapacidad del Sistema de acuerdo con las disposiciones de esta Ley o cualquier otra ley anterior de pensiones, serán examinados periódicamente por un médico nombrado por el Sistema.** Si dicha incapacidad desapareciere, el pago de la pensión continuará por un período de seis (6) meses a partir de la fecha del examen médico que lo declara capacitado para reingresar al servicio.

(d) Cuando un pensionado por incapacidad rehusare someterse al examen médico correspondiente ordenado por el Sistema, después de ser requerido para ello en tres (3) ocasiones distintas a intervalos de no más de un mes, se considerará que dicho pensionado por incapacidad renuncia a su pensión y el pago de la misma cesará al finalizar el mes que corresponda al último requerimiento. (Énfasis suplido). 18 LPRA sec. 396g.

**C.      Reglamento de Asuntos Adjudicativos de la Junta de Retiro del Gobierno de Puerto Rico:**

El Reglamento de Asuntos Adjudicativos de la Junta de Retiro del Gobierno de Puerto Rico, Reglamento Núm. 9614 del 6 de noviembre de 2024, ("Reglamento Núm. 9614"), aplica a todo procedimiento de naturaleza apelativa "sobre Determinaciones Finales que se hayan originado de controversias entre los participantes, pensionados o beneficiarios de la Junta de Retiro y el Director Ejecutivo, que se presenten en la Secretaria de la Oficina de Asuntos Adjudicativos de la Junta, a partir de la vigencia de este Reglamento." Regla 1.03, *supra.* Cualquier persona pensionada que esté en desacuerdo con una determinación final emitida por el Director Ejecutivo podrá presentar un recurso de apelación ante la Oficina de Asuntos Adjudicativos, según dispone la Regla 2.02, *supra*.

El precitado Reglamento establece la normativa regulatoria del procedimiento administrativo a seguir ante la Oficina de Asuntos Adjudicativos. En específico, la Regla 3.12, *supra*, preceptúa que en este proceso no aplicaran las Reglas de Evidencia con excepción de los principios fundamentales de evidencia que lleven a la consecución de una

solución rápida, justa y económica del procedimiento. Asimismo, de conformidad con la precitada Regla, "solo se admitirá como prueba aquella que estuvo sometida ante la consideración del Director Ejecutivo al tomar la determinación final." *Id.* De igual modo, como parte del proceso administrativo expuesto en dicha Regla, a las partes les asiste el derecho a "exponer sucintamente sus respectivas teorías y anunciaran la prueba que han de presentar." *Id.*

"La parte que tenga el peso de la prueba iniciará la presentación de la evidencia en la audiencia pública." Regla 3.13, *supra.* Cónsono con lo anterior, las partes podrán presentar testigos o solicitar la comparecencia de peritos de conformidad a las disposiciones de la Regla 2.19, *supra.* De igual manera, las partes podrán solicitar ordenes dirigidas a "la producción de documentos, libros, materiales u objetos tangibles." Regla 2.18, *supra.*

**D.     El Derecho a un Debido Proceso de Ley:**

El Art. II, Sec. 7 de la Constitución de Puerto Rico reconoce el derecho a un debido proceso de ley como garantía protectora de los intereses de libertad y propiedad. Const. ELA [Const. PR], LPRA Tomo I. La referida salvaguarda exige que el Estado realice un procedimiento justo y equitativo al momento de intervenir con el interés propietario de una persona. *Torres Rivera v. Policía de PR*, 196 DPR 606, 624 (2016). Ante un reclamo fundamentado en la vertiente procesal del debido proceso de ley, corresponde examinar si existe un interés que amerite protección. *Íd.* De responder en la afirmativa, procede evaluar cuál es el procedimiento debido. *Íd.*

Los requisitos para garantizar la modalidad procesal del debido proceso de ley son los siguientes: (1) la notificación adecuada del proceso; (2) un proceso ante un juez imparcial; (3) la oportunidad de ser oído; (4) el derecho a contrainterrogar a los testigos y examinar la evidencia presentada en su contra; (5) el tener asistencia de abogado, y (6) que la decisión se base en el expediente del caso. *Calderón Otero v. C.F.S.E.*, 181 DPR 386, 399 (2011).

Ahora bien, los procedimientos adjudicativos de naturaleza administrativa se rigen por la Ley de Procedimiento Administrativo Uniforme (conocida como "LPAU"), Ley Núm. 38-2017, según enmendada. De conformidad con la sección 3.1 de la precitada ley, en un procedimiento cuasi adjudicativo, la agencia debe salvaguardar a las partes: el derecho a la notificación oportuna de los cargos o querellas o reclamos en contra de una parte; el derecho a presentar evidencia; el derecho a una adjudicación imparcial; y el derecho a que la decisión esté basada en el expediente. 3 LPRA sec. 9641. Asimismo, en su sección 3.13, inciso (e) de la LPAU, establece que "[l]as Reglas de Evidencia no serán aplicables a las vistas administrativas, pero los principios fundamentales de evidencia se podrán utilizar para lograr una solución rápida, justa y económica del procedimiento." 3 LPRA sec. 9653.

**III.**

Mediante su recurso de revisión judicial, el recurrente cuestiona que la Oficina de Asuntos Adjudicativos confirmó una determinación de la Junta de Retiro basada en la opinión pericial de un médico que nunca le había atendido y que no examinó su récord médico. A su vez, asevera que el informe finalmente preparado por el referido médico nunca le fue entregado por la Junta de Retiro. Además, argumenta que el aludido médico no presentó su testimonio durante el procedimiento celebrado ante la Oficina de Asuntos Adjudicativos. De otra parte, añade, que la referida Oficina fundamentó su dictamen en prueba de referencia inadmisible. Ante los anteriores razonamientos, concluye que su derecho a un debido proceso de ley fue violentado.

En oposición, la Junta de Retiro aduce que cumplió con el debido proceso de ley que le asistía al recurrente. Al respecto, razona que le notificó a éste sobre el proceso de reevaluación de su caso de incapacidad. Además, alegó que el informe preparado por el Dr. Rafael E. Seín ("Dr. Seín") siempre ha sido parte del expediente del recurrente y que nunca se la ha negado acceso al mismo. Asimismo, asevera que el recurrente fue

informado de la determinación de suspender su pensión provisional por incapacidad y de los términos para recurrir de la misma ante la Oficina de Asuntos Adjudicativos. Concluye, que el recurrente no rebatió la presunción de regularidad y corrección que les asiste a las agencias administrativa en el descargo de sus labores, por lo que la decisión objeto de revisión debe ser confirmada por esta Curia.

Ante los cuestionamientos relativos a la violación de un debido proceso de ley en su vertiente procesal, se hace necesario evaluar el procedimiento que siguió la Junta de Retiro para suspender la pensión provisional por incapacidad del recurrente. Veamos.

De entrada, es meritorio mencionar que no se ha controvertido el hecho de que la pensión inicialmente asignada al recurrente era una de naturaleza provisional. De la copia del expediente administrativo ante nos, se desprende una comunicación escrita dirigida al recurrente con fecha de 15 de julio de 2024. Mediante esta, la Junta de Retiro informó al recurrente sobre la necesidad de hacer una reevaluación de su caso de incapacidad en virtud del cual previamente se la había concedido una pensión por incapacidad provisional. En la misma comunicación, la Junta de Retiro le solicitó al recurrente que presentara unos formularios. En la alternativa, le requirió que sometiera copia certificada de su récord médico del que surgieran las condiciones por las cuales éste solicitó los beneficios de pensión por incapacidad. A su vez, la Junta de Retiro le informó al recurrente de la posibilidad de obtener una prórroga para la entrega requerida, previa solicitud escrita.

Así las cosas, también de la copia del expediente administrativa presentado, se desprenden varias notas esbozadas por el personal de la Junta de Retiro en las que se establecen los siguientes hechos: a) que el 23 de agosto de 2024, la Junta de Retiro le solicitó al recurrente evidencia médica del tratamiento recibido en la Corporación del Fondo del Seguro del Estado, posterior al mes de marzo del año 2024; y b) que el 8 de noviembre de 2024 se envió al Dr. Seín evidencia médica del recurrente.

Posteriormente, el recurrente fue evaluado por el médico asignado para su caso, el Dr. Seín. Esta evaluación se suscitó el día 2 de diciembre de 2024, según surge del documento intitulado "Disability Independent Medical Evaluation – PR P.C." Este documento tiene fecha de 29 de enero de 2025. Del referido documento se desprenden una serie de datos relevantes. El primero de ellos se trata de las siguientes palabras proferidas por el Dr. Seín: "This report is based on the interview, physical examination and evaluation of the medical records provided." De igual modo, de este informe surge que se evaluó el historial médico pasado y el historial social del recurrente.

Asimismo, aparece redactado que el aludido Doctor le realizó un examen físico a dicha parte. Además, este informe contiene información médica del recurrente que se proporcionó y fue examinada por el Dr. Seín. Entre esta información, se encuentran las notas de progreso de médicos que evaluaron al recurrente y un "Informe Médico Especial: Clínica de Manejo de Dolor" del día 31 de julio de 2024. Finalmente, el informe médico concluye lo siguiente "At present no evidence of physical impairment for disability is present."

Luego de esto, el 21 de febrero de 2025, la Junta de Retiro, mediante comunicación escrita, le informó al recurrente sobre la suspensión de su beneficio de pensión por incapacidad provisional. Como parte de la misma comunicación, le advirtió de su derecho a apelar la decisión de suspensión ante la Oficina de Asuntos Adjudicativos, derecho que ejerció. Durante el procedimiento apelativo ante dicha Oficina, el recurrente tenía a su favor las garantías procesales dispuestas en el Reglamento Núm. 9614, *supra.* Le asistía el derecho a presentar evidencia y el deber de llevar la carga probatoria de demostrar las alegaciones que había levantado en contra de la Junta de Retiro. Para apoyar su caso, podía solicitar la comparecencia de testigos y peritos de conformidad a la Regla 2.19, *supra*. De igual forma, podía solicitar al amparo de la Regla 2.18, *supra* el informe pericial del Dr. Seín y la producción de cualquier otra documentación pertinente.

Por lo cual, carecen de mérito los argumentos del recurrente relacionados a que la Junta de Retiro no le entregó el referido informe, puesto que dicha parte podía hacer uso de las disposiciones reglamentarias aplicables y solicitarlo. Tampoco le asiste la razón al recurrente en el planteamiento sobre que el Dr. Seín no prestó testimonio en la vista administrativa apelativa, debido a que éste pudo haber solicitado su comparecencia.

Cabe destacar, que la Ley Núm. 160-2013, *supra* es clara al establecer que los pensionados por incapacidad serán examinados periódicamente por un médico nombrado por el Sistema de Retiro. 18 LPRA sec. 396g. Siendo así, la Junta de Retiro tenía la autoridad para reevaluar el caso del recurrente mediante la contratación del Dr. Seín. De la precitada legislación no surge que el médico contratado tenía que ser uno que haya prestado servicios médicos previos a la persona pensionada.

De otra parte, según esbozado, los días 15 de julio y 23 de agosto del año 2024, la Junta de Retiro le solicitó al recurrente que proveyera evidencia médica de su caso de incapacidad. Además, el 8 de noviembre de 2024, la Junta de Retiro le envió al Dr. Seín la evidencia médica que tenían del caso del recurrente. Por tanto, el Dr. Seín pudo fundamentar su informe con la evidencia médica disponible.

De las consideraciones antes expuestas, surge que el recurrente tuvo una debida notificación de la reevaluación de su caso al amparo de la Ley Núm., 160-2013, *supra.* Asimismo, la selección del médico evaluador estuvo amparada en la precitada legislación. De igual modo, el recurrente fue notificado de la posibilidad de apelar su caso, procedimiento que siguió. En dicho proceso, contó con la oportunidad de utilizar mecanismos de descubrimiento de prueba y de presentar evidencia documental, testimonial y pericial a su favor. De igual manera, durante dicho procedimiento estuvo representado por abogado. A su vez, al concluir el proceso, la Oficina de Asuntos Adjudicativos le advirtió al recurrente de su derecho a apelar ante

este Foro Judicial, derecho al cual se acogió. Por lo tanto, el debido proceso de ley del recurrente no fue violentado.

Por otro lado, tampoco le asiste la razón al recurrente en cuanto a los planteamientos de la aplicación de las Reglas de Evidencia. La sección 3.13 de la LPAU y la Regla 3.12 del Reglamento Núm. 9614, *supra*, establecen que las Reglas de Evidencia no se aplican a los procedimientos administrativos. Únicamente y vía excepción, aplican los principios fundamentales de estas siempre y cuando logren una solución rápida, justa y económica del procedimiento. El recurrente no levantó alegaciones relacionadas a la violación de algún principio fundamental evidenciario.

Es preciso señalar, que el recurrente tenía el peso de la prueba para impugnar la decisión de la Junta de Retiro ante la Oficina de Asuntos Adjudicativos y para derrotar ante este Tribunal la presunción de regularidad y corrección que les asiste a las decisiones administrativas. De una lectura de la totalidad del expediente digital de SUMAC y de la copia del expediente administrativo presentada ante nos, no surge que el recurrente haya presentado evidencia suficiente para derrotar la aludida presunción. En vista de ello, *confirmamos* la determinación recurrida.

## IV.

Por los fundamentos que anteceden, confirmamos la "*Resolución*" objeto de revisión.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones